Points decided.

(February 4, 1902.)

## MORRISON v. REGAN.

[67 Pac. 955.]          i

MINING CLAIM — NATURAL OBJECT—PERMANENT MONUMENT.—A description in the notice of location of a mining claim is sufficient, under section 2324 of the Revised Statutes of the United States and section 3102 of the Revised Statutes of Idaho, which describes the claim as located a certain number of feet from another mine, giving the direction, as a mine is a natural object or permanent monument within the meaning of those terms as used in said statutes.

SUFFICIENCY OF LOCATION CERTIFICATE.—A location certificate containing the following description held sufficient under the provisions of said sections 2324 of the Revised Statutes of the United States, and 3102 of the Revised Statutes of Idaho, to wit: That the locators "have located six hundred linear feet along this lode or vein of quartz, by three hundred feet on each side of the middle of the vein or lode, making six hundred feet in length. This claim, so located, is named the Bullion mine, and is situated in French mining district, Owyhee county, Idaho territory, and is described as follows: Commencing at this stake and notice, which is situated about three hundred feet in a northwesterly direction from the Minnesota mine. This is an extension of the Red Jacket mine, and running thence along the vein or lode in a southerly direction to a similar stake and notice. We, the undersigned, claim six hundred linear feet in a southerly direction from this stake and notice to a similar stake and notice. This claim is six hundred linear feet long."

REJECTION OF LOCATION CERTIFICATE.—It is only where the location certificate fails to make reference to natural objects or permanent monuments sufficient to identify the claim that a court may reject it on that ground.

SUFFICIENCY OF LOCATION NOTICE.—Where it is shown that a mining claim has been located in good faith, if by any reasonable construction the language used in the notice in the description and in referring to natural objects and permanent monuments will impart notice to a subsequent locator, it is sufficient.

LIBERAL CONSTRUCTION.—A liberal construction should be given to descriptions of mining claims and references to natural objects in location certificates.

AMENDMENT OF LOCATION CERTIFICATE.—Erroneous or defective location certificates may be amended under the provisions of section

5 of an act entitled "An act to define the manner of locating lode, quartz and placer claims." (Sess. Laws 1899, p. 237.)

EFFECT OF AMENDED LOCATION.—Such amended location relates back to the date of the original location, provided it does not interfere with the existing rights of others at the time when such amendment is made.

APPLICATION OF PROVISO.—The proviso to said·section does not apply to amended locations where, by the amendment, the surface boundaries are not changed, or where there is no part of an overlapping claim which has been abandoned taken in by such amended location. Said proviso only applies where the boundaries are changed, or where part of an overlapping claim which has been abandoned is taken in.

AUTHORITY TO MAKE AMENDED LOCATION.—The agent,·or anyone authorized to do so, can make an amended or additional location. Such authority is not required to be in writing.

EVIDENCE.—On the trial of an action like the one at bar, all evidence tending to show the right of the plaintiff to the possession of the land in controversy is competent evidence and should be admitted.

(Syllabus by the court.)

APPEAL from District Court, Owyhee County.

J. G. Watts and M. A. Folsom, for Appellant.

It is only where the insufficiency of the location certificate in its failure to mention natural objects or permanent landmarks is apparent upon its face that the court may reject it. (*Dillon v. Bayliss,* 11 Mont. 171, 27 Pac. 725; *Darger v. Le Sieur,* 8 Utah, 160, 30 Pac. 363; *Hammer v. Garfield M. & M. Co.,* 130 U. S. 291, 9 Sup. Ct. Rep. 548, 32 L. ed., 964; *Russell v. Chumasero,* 4 Mont. 309, 1 Pac. 713; *Clearwater Short Line Ry. Co. v. San Guarde,* 7 Idaho, 106, 61 Pac. 137; *Farmington Gold Min. Co. v. Rhymney Gold etc. Co.,* 20 Utah, 363, 77 Am. St. Rep. 913, 58 Pac. 832; *Flavin v. Mattingly,* 8 Mont. 242, 19 Pac. 384.) A liberal rather than a technical construction should be given to location certificates, and their sufficiency with reference to natural objects or permanent monuments has been generally held to be a question of fact. (*Brown v. Levan,* 4 Idaho, 794, 46 Pac. 661; *Fissure Min. Co. v. Old Susan Min. Co.,* 22 Utah, 438, 63 Pac. 587.) And where the record contains a reference to some landmark,

the court should not, upon a mere inspection of the record, and in the absence of evidence, declare the description insufficient. (*Russell v. Chumasero,* 4 Mont. 309, 1 Pac. 713.)   Absolute certainty is not required in the identification of a claim; it is only necessary that the description be sufficiently definite to identify the claim with reasonable certainty.   This is the language of the statute, and the courts have so held.   (*Brady v. Husby,* 21 Nev. 453, 33 Pac. 801.)   Many objects have been enumerated by the courts as being such permanent and conspicuous landmarks as would satisfy the requirements of the statute, and among others it has been held repeatedly that a reference to well-known mining claims is a sufficient compliance with the law.   (*Duncan v. Fulton,* 15 Colo. App. 140, 61 Pac. 244; *Wells v. Davis,* 22 Utah, 322, 62 Pac. 3; *Bramlett v. Flick,* 23 Mont. 95, 57 Pac. 869; *Kinney v. Fleming* (Ariz.), 56 Pac. 723.)   Can a void original location certificate be amended?   (*McEvoy v. Hyman,* 25 Fed. 596; *Van Zant v. Argentine Min. Co.,* 2 McCrary, 159, 8 Fed. 725; *Strepey v. Stark,* 7 Colo. 614, 5 Pac. 111; *Frisholm v. Fitzgerald,* 25 Colo. 290, 53 Pac. 1109; *Duncan v. Fulton,* 15 Colo. App. 140, 61 Pac. 244; *McGinnis v. Egbert,* 8 Colo. 41, 5 Pac. 652; *Jordan v. Schuermann* (Ariz.), 53 Pac. 579; *Moyle v. Bullene,* 7 Colo. App. 308, 44 Pac. 69.)   The location of a mining claim may be made by an agent.   (*Schultz v. Keeler,* 2 Idaho, 568, 21 Pac. 418; *Thompson v. Spray,* 72 Cal. 528, 14 Pac. 182; *Moore v. Hamerstag,* 109 Cal. 122, 41 Pac. 805.)   And the contract or agency need not be evidenced by writing.   (*Hirbour v. Reeding,* 3 Mont. 15; *Rush v. French,* 1 Ariz. 99, 25 Pac. 816.)   The law recognizes the possessory title of the occupant of mineral land as good against a mere trespasser.   We should have been allowed to prove a possessory title, so as to put the defendant upon proof that he had a better title.   Both parties rely upon simple possession alone; priority of possession gives the better right.   (*Campbell v. Rankin,* 99 U. S. 261, 25 L. ed. 435; *Faxon v. Bernard,* 2 McCrary, 44, 4 Fed. 702; *North Noonday Min. Co. v. Orient Min. Co.,* 11 Fed. 125; *Armstrong v. Lower,* 6 Colo. 581.)   On appeal

from judgment of nonsuit, the court will regard as proven whatever relevant facts plaintiff's evidence tended to prove. (*Ferris v. Baker,* 127 Cal. 120, 59 Pac. 937; *Warner v. Darrow,* 91 Cal. 309, 27 Pac. 737.) Where a party moves for a nonsuit, the ground of the motion must be precisely stated, and no other grounds than those stated can be considered by the trial court in granting or refusing the motion, or by the appellate court in reviewing the order. (*Shain v. Forbes,* 82 Cal. 577, 23 Pac. 198; *Coffey v. Greenfield,* 62 Cal. 602; *Bronzan v. Drobaz,* 93 Cal. 647, 29 Pac. 254.)

C. M. Hays, John F. Nugent and Johnson & Johnson, for Respondent.

The mining act of the territory of Idaho in force January 1, 1887, when the location of the Bullion claim was attempted, provided that, among other things, the notice of location "shall also give such a description of the locality of the claim by reference to natural landmarks or fixed objects and contiguous claims, if there be any, as to render the situation of the same reasonably certain, from the letter of the notice itself." . (Act of February. 10, 1881, section 3 (11 Sess. Laws, 263), and subsequently enacted into section 3102 of the Revised Statutes.) By section 6 of the same act (Rev. Stats., sec. 3105), it is provided that: "The notice herein required to be recorded is a copy of the notice placed upon the claim, or substantially a copy of the same." (U. S. Rev. Stats., sec. 2324; *Gleeson v. Martin White M. Co.,* 13 Nev. 466; *Gilpin County M. Co. v. Drake,* 8 Colo. 589, 9 Pac. 787; *Drummond v. Long,* 9 Colo. 538, 13 Pac. 543; *Clearwater Short Line Ry. Co. v. San Garde,* 7 Idaho, 106, 61 Pac. 137, 138; *Brown v. Levan,* 4 Idaho, 794, 46 Pac. 661.) The rule as to amended locations is well established by the decisions and approved by the text-writers; and the statute of our state only allows an amended location; "provided, that such amended location does not interfere with the existing rights of others at the time when such amendment is made." (5 Sess. Laws, p. 238, sec. 5.) The rule of law is thus stated in 1 Lindley on Mines, section 398, page 507;

Barringer and Adams on Mines and Mining, page 251. Counsel in their complaint and at the trial below properly rested plaintiff's claim upon the notice of location of January 1, 1887, and it was absolutely essential for them to do so, for a valid location is the only method of acquiring title to the mineral lands of the United States. (*Gwillim v. Donnellan,* 115 U. S. 50, 5 Sup. Ct. Rep. 1110; *Lalande v. McDonald,* 2 Idaho, 307, 13 Pac. 350.) Plaintiffs, without a valid location, could acquire no rights as against one who afterward peaceably locates a mining claim covering the same ground, and complies with the mining laws and regulations. And in the absence of evidence it will not be presumed that defendant has failed to do this. Whether he has done so or not in this instance is a question for the land department to decide before granting a patent. Plaintiffs are in no position to raise this question, for, if they recover at all in this action, they must do so on the strength of their own title. (*Belk v. Meagher,* 104 U. S. 284; *Russell v. Hoyt,* 4 Mont. 412, 2 Pac. 25; *Hauswirth v. Butcher,* 4 Mont. 299, 307, 1 Pac. 714, 715; *Horswell v. Ruiz,* 67 Cal. 111, 7 Pac. 197.) From the time the second person has perfected his location, the prior occupant is trespasser. (*Du Prat v. James,* 65 Cal. 555, 557, 4 Pac. 562; *Hopkins v. Noyes,* 4 Mont. 556, 2 Pac. 280; *Noyes v. Black,* 4 Mont. 527, 2 Pac. 769; *Tibbits v. Ah Tong,* 4 Mont. 536, 2 Pac. 759; *Patterson v. Tarbell,* 26 Or. 34, 35, 37 Pac. 76; Barringer and Adams on Mines and Mining, 317; 1 Lindley on Mines, sec. 216.) "In an action to quiet title, the burden rests upon the plaintiff to show title in himself, and if he fails to make out a case, he is not entitled to recover." (*Winter v. McMillan,* 87 Cal. 257, 22 Am. St. Rep. 243, 25 Pac. 407; *San Francisco v. Ellis,* 54 Cal. 72; *Heney v. Pesoli,* 109 Cal. 53, 58, 41 Pac. 819; *Cronin v. Bear Creek Gold Min. Co.,* 3 Idaho, 614, 32 Pac. 204; *Kirk v. Meldrum,* 28 Colo. 453, 65 Pac. 635; Rev. Stats., sec. 4354, subd. 4.) It is well settled that to render a location valid the claim must be staked. (*Newbill v. Thurston,* 65 Cal. 419, 4 Pac. 409; *White v. Lee,* 78 Cal. 595, 12 Am. St. Rep. 115, 21 Pac. 363; *Holland v.*

*Mt. Auburn Min. Co.,* 53 Cal. 149; *Purdum v. Laddin,* 23 Mont. 387, 59 Pac. 153; Idaho Laws, 11th Sess., p. 263, sec. 2; Rev. Stats., sec. 3101; 1 Lindley on Mines, sec. 371; *Lockhart v. Wills,* 9 N. Mex. 344, 54 Pac. 336, 341; *Gelcich v. Moriarty,* 53 Cal. 217; *Pharis v. Muldoon,* 75 Cal. 284, 287, 17 Pac. 70.)

SULLIVAN, J.—This is an action in support of an adverse claim made by the plaintiff against the application for a patent made by the defendant to the Summit lode mining claim, situated in French mining district, Owyhee county. The complaint alleges, *inter alia,* that the plaintiffs were the owners of a certain lode mining claim known as the Bullion; that said claim was located on the first day of January, 1887, by James Shaw and Simon Morrison; that on the nineteenth day of September, 1900, the plaintiffs by their agent made an amended location of said Bullion claim; that the plaintiffs and their grantors have performed the annual work required by law upon said Bullion claim from the date of its location to the present time, and have performed all other acts required to entitle them to hold said claim, and that during all the time since January 1, 1887, the plaintiffs and their grantors have been in the actual, open, notorious, undisputed, and uninterrupted possession of said premises; that on the tenth day of January, 1901, the defendant filed in the United States land office at Boise City an application for a patent to the Summit lode claim, which conflicts with and overlaps the said Bullion claim. The answer denies the validity of the Bullion location, and puts in issue the material allegations of the complaint. A cross-complaint was filed by the defendant, which was answered by the plaintiffs. On the trial plaintiffs introduced some evidence of discovery, location, posting, and recording of notice of location, and thereupon offered in evidence the location notice, which is as follows:

"Bullion—Notice of Relocation.

"Notice is hereby given that we, the undersigned, having complied with the requirements of chapter 6 of title 32 of the Revised Statutes of the United States, and of the laws of Idaho

territory, relating to the location of mining claims, and all local customs, laws, and regulations, have located six hundred (600) linear feet along this lode or vein of quartz, by three hundred (300) feet on each side of the middle of the vein or lode, making six hundred feet in width. This claim so located is hereby named the 'Bullion Mine,' and is situated in French mining district, Owyhee county, Idaho territory, and is described as follows: Commencing at this stake and notice, which is situated about three hundred feet in a northwesterly direction from the Minnesota mine—this is an extension of the Red Jacket mine; and running thence along the vein or lode in a southerly direction to similar stake and notice. We, the undersigned, claim six hundred (600) linear feet in a southerly direction from this stake and notice to a similar stake and notice. This claim is six hundred (600) linear feet long.

"Dated January 1st, year 1887.

"Locators: JAMES SHAW, 300 feet.

"SIMON MORRISON, 300 feet.

"Territory of Idaho, &#125; ss.
County of Owyhee.

"I, James Shaw, do solemnly swear that I am acquainted with the mining ground described in the notice of location herewith, called the Bullion ledge, lode, or claim, and that the ground and claim therein described, or any part thereof, has not, to the best of my knowledge and belief, been heretofore located according to the laws of the United States and of this territory, or, if so located, that the same has been abandoned or forfeited by reason of the failure of such former locators to comply in respect thereto with the requirements of said laws.                        "JAMES SHAW.

"Subscribed and sworn to before me this first day of January, 1887.                        JAMES LYMAN,

"County Recorder.

"Filed January 1, 1887, at 2 o'clock P. M.

"JAMES. LYMAN,

"County Recorder.

"Recorded in Book 7 of Mining Claims, on pages 260 and 261, among the records of Owyhee county, Idaho. [Certified by E. L. Ballard, ex-officio recorder of said Owyhee county, to be a correct copy of the original record.]"

Counsel for defendant objected to the introduction of said notice on the ground that there is no such description in the notice by reference to such natural objects or permanent landmarks or contiguous claims as is sufficient to identify the claim under the statutes. Thereupon James Shaw was called as a witness, and testified that the Minnesota and Red Jacket mines mentioned in said notice were well-known claims, and that as near as he could recollect the Minnesota claim was six hundred feet by one hundred feet, after which said objection was argued by respective counsel. The objection was sustained by the court, and the notice of location was not admitted in evidence.

George A. Sonnemann was then called by plaintiffs, and testified that he made an amended location of said Bullion lode by authority of the owners; that he had a lease and bond on the same, and that thereunder he had the right to work said Bullion lode, and also had the privilege of perfecting the title and applying for a patent; that he made an amended location of said Bullion lode on the nineteenth day of September, 1900; thereupon said amended location notice was offered in evidence, which offer was objected to by counsel for the defendant for the reasons that a void original location notice is not susceptible of amendment; that the testimony does not show the person who made the amended location had proper authority to make it; that the pleadings show that between the date of the original location and date of the amended location, in 1900, rights to claims upon which the defendant is applying for patent have intervened, and for the reason that no amended location can be made so as to cut off intervening rights, and that the amended location is not in the names of the same parties that made the original location. In passing upon that objection, the trial court said: "I am inclined to think that this amended location becomes effective only by reason of the fact that there

was an original location. The court has held that there was no original location so far as the evidence in this case is concerned, and, that being true, there was nothing to amend." The objection was then sustained, and the court refused to admit said amended location notice in evidence. Thereupon the witness James Shaw was recalled, and testified that the lode claim for which the defendant is applying for a patent was located January 1, 1892, five years after the location of said Bullion claim; that he had done the assessment work annually on the Bullion since its location, in 1887. Counsel for plaintiffs then offered in evidence certified copies of proof of labor on said Bullion claim, which offer was objected to on the ground that proof of labor was entirely immaterial, for the reason that the court had excluded the original notice of location, and had held that void. The objection .was sustained by the court. Thereafter counsel for plaintiffs offered other evidence in support of the allegations of the complaint, and under the objection of counsel for the defendant it was all rejected, on the ground that it was immaterial, for the reason that the original location notice had been excluded and declared void, and for that reason no further questions were proper. Thereafter, on motion of counsel for defendant, the cross-complaint was dismissed. Thereafter counsel for plaintiffs asked permission to recall the notice that they had rested their case, and asked permission to introduce proofs of the present ownership of said Bullion lode mining claim; to which request counsel for defendant objected, on the ground that the court had already excluded the location notice of said Bullion claim, and for that reason the question of ownership was not before the court, which objection was sustained by the court. Counsel for defendant then moved for a nonsuit on the ground that plaintiffs had failed to prove any valid location of the Bullion lode mining claim, or any right, title, or interest to the ground in conflict; that plaintiffs take nothing by their action; and that the same be dismissed, without costs against the plaintiffs. The motion was granted, and judgment of nonsuit was entered. This appeal is from the judgment.

Twelve errors are assigned on which the plaintiffs, who are appellants, rely for a reversal of the judgment. The refusal of the court to admit in evidence the original location notice of the Bullion mining claim is assigned as error, a copy of which notice is above set forth. When said notice was offered in evidence counsel for the respondent objected to its introduction on the ground that it contained no such description, by reference to such natural objects or permanent landmarks or contiguous claims, sufficient to identify said claim, as required by law. After said offer and objection was made, and before a ruling thereon by the court, counsel for appellants, by the witness James Shaw, proved that the Minnesota and Red Jacket mines named in said notice of location were well-known claims, and that the Minnesota claim was six hundred by one hundred feet. The objection was then argued and submitted to the court for decision. The objection was sustained, and the notice excluded.

It is contended that said notice of location failed to comply with the provisions of section 2324 of the Revised Statutes of the United States, and section 3102 of the Revised Statutes of Idaho. Section 2324 of the Revised Statutes of the United States is as follows: "All records of mining claims hereafter made shall contain the names of the locators, the date of the location, and such description of the claim or claims located, by reference to some natural object or permanent monuments, as will identify the claim." Section 3102 of the Revised Statutes of Idaho is as follows: "The notice must contain the date of the location, the names of the locators, the name of the claim, ledge or lode, the quantity in feet claimed along the ledge or lode, the width claimed from the middle of the vein, and must also give such a description of the locality of the claim, by reference to natural landmarks or fixed objects, and contiguous claims, if there be any, as to render the situation of the same reasonably certain from the letter of the notice itself." The court held that the location notice of the Bullion claim did not sufficiently comply with the provisions of said sections of the Revised Statutes of the United States and of

the state of Idaho, above quoted, and refused to permit its introduction as evidence. That ruling of the court was based on the decisions of this court in *Brown v. Levan,* 4 Idaho, 794, 46 Pac. 661, and *Railroad Co. v. San Garde,* 7 Idaho, 106, 61 Pac. 137. And because of the meager statement of the facts in the case of *Brown v. Levan* we are not surprised that the court held the Bullion lode notice of location defective, in that it failed to "give such a description of the locality of the claim, by reference to natural landmarks or fixed objects and contiguous claims, as to render the situation of the same reasonably certain from the letter of the notice itself." That case involved the title to the Magpie mining claim and that portion of the location notice purporting to comply with the provisions of the sections of statute above quoted is as follows: "The mining claim hereby located is situated in . . . . mining district, Boise county, state of Idaho, and is particularly described as follows, to wit: Being situated and located on the north side of North Willow creek, about one-half mile from the Hurt mines, the direction being southwest. The adjoining claims are the Gem of the Woods on the north, the Kid on the south, and the Greyhound on the east." On the trial of said cause, in support of the allegations of the complaint, and to show the location of said Magpie claim, said notice of location was introduced, also oral testimony as to what was known as the "Hurt Mines," mentioned in said notice, and it also appeared that neither the Kid mining claim, nor the Greyhound mining claim, referred to in said location notice as adjoining claims, were located at the time of the location of the Magpie, and that the Gem of the Woods claim therein mentioned never was located, and, as neither of said mentioned claims had been located when the Magpie location was made, reference to them as natural landmarks or fixed objects or as contiguous claims could not be made a compliance with said provisions of the statutes of Idaho and the United States *supra.* The evidence as to what constituted the "Hurt Mines," as referred to in said location notice, is largely quoted in said opinion, and it is not necessary to quote it here. It is sufficient to say that the evi-

dence clearly showed that there were no "Hurt Mines" located about one-half mile in a southeast direction from the Magpie. William Francis testified that the Silver Spray mine, one of the Hurt mines, was located southwest of the Magpie, and the Old Man mine, which was another Hurt mine, was located about one thousand feet east of the Magpie. Hurt testified that the Silver Leaf, another of the Hurt claims, was southeast of the Magpie, and joins, or nearly joins, it; that the Old Man is east of the Magpie, and the Grey Eagle east of the Old Man claim. The evidence entirely fails to show that the Hurt mines were about one-half mile northeast of the Magpie claim, or that the Magpie claim is about one-half mile southwest of the Hurt mines. One of the Hurt mines was southwest of the Magpie, and another adjoining the Magpie, or nearly so, on the east, and another about one thousand feet east of it, and the Birthday claim about a half a mile northeast of it. Under those facts, the court held that the reference in said notice of location to the Hurt mines as a permanent monument was not a sufficient compliance with the provisions of the above-quoted statutes.

The evidence clearly showed the mines known as the "Hurt Mines" in that locality were not about one-half mile in a northeasterly direction from the Magpie claim, and contiguous. One claim was southwest of it, another east of it and adjoining it, and another about one thousand feet east of it, and another about one-half mile northeast of it. Said four claims were known as the "Hurt Mines." Being so scattered and in divers directions from the Magpie claim they were not a natural landmark or fixed object such as would identify the Magpie claim by simply referring to them in the notice of location thereof as being "about one-half mile from the Hurt mines, the direction being southwest."

Under the provisions of said section 2324 of the Revised Statutes of the United States, and section 3102 of the Revised Statutes of Idaho, reference may be made, in a notice of location of mining ground, to a located mining claim, as a mining claim is a natural object, or landmark, or fixed object, with-

in the meaning of said provisions; but such reference must be reasonably certain, which was not so in the Magpie location notice. It has been frequently held that reference to well-known mining claims is a sufficient compliance with the law. (*Hammer v. Milling Co.,* 130 U. S. 291, 9 Sup. Ct. Rep. 548, 32 L. ed. 964; *Duncan v. Fulton,* 15 Colo. App. 140, 61 Pac. 244; *Kinney v. Fleming* (Ariz.), 56 Pac. 723.) There are some early decisions to the contrary, but the supreme courts of the United States, of Arizona, and of Colorado, in the decisions above cited, hold as above stated.

It was inadvertently stated in the decision of *Brown v. Levan, supra,* that the requirement of said section 3102 of the Revised Statutes, in reference to naming the adjoining claims in the location notice, had been complied with, when the record shows that the mining claims named in said notice as adjoining claims had not been located at that time. If they had been located prior to the location of the Magpie, reference to them as adjoining claims would have been a sufficient reference to a natural object, landmark, permanent monument, or fixed object to come within the provisions of said statutes, and the conclusion would have been different; for under the provisions of said section 3102 of the Revised Statutes, reference might have been made to an adjoining claim as a natural landmark, fixed or permanent object, as the natural object may adjoin or be upon the claim located, for the law does not require that it be some distance from it. In the case of *Railroad Co. v. San Garde, supra,* this court held that, as the location notice failed to give the direction of the mining claim from the mouth of "Big Canyon" (the natural object to which it was attempted to tie said mining claim), it failed to comply with the provision of the law in that regard, and adhered to the rule laid down in the case of *Brown v. Levan, supra.* There the notice failed to give the direction of the claim from the fixed object to which an attempt was made to tie it.

We shall now recur to the location notice or certificate of said Bullion mining claim, and the ruling of the court in refusing to admit it in evidence on the trial. The court evi-

dently rejected said notice upon an inspection of the notice it-self. No evidence was permitted to be introduced as to the suf-ficiency or insufficiency of said notice, and no evidence by which the court could determine whether the references and state-ments in said notice were true or not, or sufficient to render the situation or location of said mining claim reasonably cer-tain from the letter of the notice itself, except the witness Shaw was permitted to testify that the Minnesota and Red Jacket mines mentioned in said notice were well-known mines, and that the former was one hundred by six hundred feet. The location notice was rejected as being insufficient on its face. It is well established by numerous decisions that only where the insufficiency of the location certificate, in its failure to make intelligent reference to natural objects or permanent land-marks, is apparent on its face, the court may reject it. (Dil-lon v. Bayliss, 11 Mont. 171, 27 Pac. 725; Darger v. Le Sieur, 8 Utah, 160, 30 Pac. 363; Hammer v. Milling Co., supra; Russel v. Chumasero 4 Mont. 309, 1 Pac. 713; Railroad Co. v. San Garde, supra; Farmington Gold Min. Co. v. Rhymney Gold etc. Co., 20 Utah, 363, 77 Am. St. Rep. 913, 58 Pac. 832; Flavin v. Mattingly, 8 Mont. 242, 19 Pac. 384.) Of course, if there is a total failure to make any reference to such objects whatever the certificate would not be sufficient.

The location certificate under consideration states that the Bullion claim is six hundred feet in length along the vein or lode, and three hundred feet on each side thereof, commencing at a stake and notice situated about three hundred feet in a northwesterly direction from the Minnesota mine; that it is an extension of the Red Jacket mine; and running thence along the vein or lode in a southerly direction to a similar stake and notice; and that the locators claim six hundred linear feet in a southerly direction from this stake and notice to a similar stake and notice. It is stated in the notice that the Bullion is an extension of the Red Jacket mine, and runs thence along the vein or lode in a southerly direction. This description fixes the Bullion as a southerly extension of the Red Jacket; hence it adjoins that mine on the southerly end.

Said section 2324 of the Revised Statutes of the United States requires the certificate of location to contain the name of the locators, the date of the location, and a description of the claim by reference to such natural object or permanent monument as will identify it; and said section 3102 of the Revised Statutes provides, among other things, that such certificate must contain such a description of the locality of the claim by reference to natural landmarks, or fixed objects and contiguous claims, if there be any, as to render the situation reasonably certain from the letter of the notice itself. We think said notice, on its face, contains a substantial compliance with said provisions, and the court erred in not receiving it in evidence.

In *Hammer v. Milling Co., supra,* the certificate of location read: "This lode    located about fifteen hundred feet south of Vaughan's Little Jennie mine." The supreme court of Montana held that that was a sufficient reference to a natural object or permanent monument, within the meaning of the provisions of the statute. And the supreme court of the United States in sustaining that decision said: "We agree with the court below that the Little Jennie mine will be presumed to be a well-known natural object or permanent monument until the contrary appears." In the case at bar, it is made to appear by oral testimony that both the Minnesota and Red Jacket mines referred to in said notice of location are well-known mines in that vicinity, and that the stake and notice first referred to therein are situated about three hundred feet in a northwesterly direction from the Minnesota mine. So far as appears from the record, said Minnesota and Red Jacket mines may be patented mines, but that is not required, as they are well-known mines in that vicinity. (See *Russell v. Chumasero* supra.)

In *Farmington Gold Min. Co. v. Rhymney Gold etc. Co., supra,* the certificate of location was quite loosely drawn, and we think the correct rule in regard to the question under consideration was there laid down. In passing upon the sufficiency of that certificate, the court said: "If, by any reasonable con-

struction, is view of the surrounding circumstances, the language employed in the description will impart notice to subsequent locators, it is sufficient."

As stated in that opinion, prospectors, as a rule, make no pretensions of scholarship, are neither surveyors nor lawyers, and if, in their notices of location, technical accuracy of expression was an absolute requirement, the object of the law would in many cases be defeated, and great injustice result by disturbing possession, after much hard labor had been performed and money expended. We think the history of mining in this country shows that much more injustice has been done by depriving men who have in good faith located valuable mines, and thereafter been deprived of them by reason of some technical defect in their certificate of location, than has resulted in the "floating" of claims often referred to in the decisions of courts in this class of cases. A liberal construction should be given to location certificates, and their sufficiency with reference to natural objects or permanent monuments is a question of fact, where natural objects or permanent monuments are referred to therein. Where the location certificate contains a reference to a landmark, it should not, upon a mere inspection of the certificate, and in the absence of evidence, be declared insufficient, unless it clearly fails to identify the claims. (*Russell v. Chumasero, supra; Hammer v. Milling Co., supra; Flavin v. Mattingly, supra.*

If the rule laid down in the case at bar in any manner conflicts with the rule laid down in case of *Brown v. Levan, supra,* that case is overruled to the extent of such conflict; but the facts in that case show that the claims referred to as the "Hurt Mines" were not situated with reference to the Magpie claim as stated in the location notice, and that the mining claims named as adjoining claims were not located until some time after the Magpie claim had been located, and one of them never was located.

The second error relied upon is the refusal of the court to receive the amended certificate of location in evidence. The

court refused to admit said certificate for the reason that the original certificate had been held void by the court. As we have above held that the court was in error in holding the original certificate void, it follows that the ground for refusing to admit the amended certificate was not well taken.

Section 5 of an act entitled "An act to define the manner of locating lode, quartz and placer claims," approved February 14, 1899 (Sess. Laws 1899, p. 237), is as follows: "If, at any time, the locator of any mining claim heretofore or hereafter located, or his assigns, shall apprehend that his original certificate was defective, erroneous, or that the requirements of the law had not been complied with before filing, or shall be desirous of changing the surface boundaries, or of taking any part of an overlapping claim which has been abandoned, or in case the original certificate was made prior to the passage of this law, and he shall be desirous of securing the benefits of this act, such locator or his assigns, may file an additional certificate subject to the conditions of this act, and to contain all that this act required an original certificate to contain; provided, that such amended location does not interfere with the existing rights of others at the time when such amendment is made." That section provides for the amendment of original certificates of location, and provides that if the locator shall apprehend that his original certificate was defective, erroneous, or that the requirement of the law had not been complied with, etc., such locator or his assigns may file an amended certificate curing such defects, and such amended certificate relates back to the date of the original location, provided that it does not interfere with the existing rights of others. Most, if not all, of the mining states have similar statutes, that have been considered and construed by the federal courts and the supreme courts of those states. From such statutes, and the decisions under them, it is clear that an amended certificate may cure a defective or erroneous original certificate, and relates back to the date of the original, except when such original certificate is absolutely void, or when the rights of others have intervened between the date of the original and amended locations.

First, we shall consider whether a void original certificate can be amended. In *McEvoy v. Hyman* (C. C.), 25 Fed. 596, the circuit court of the United States in discussing the right to amend, says: "Errors and mistakes in certificates of location are of frequent occurrence. Under the law, as it is at present, a fully complete and unimpeachable certificate cannot be made without the aid of a surveyor and the best instruments. It is often, and perhaps generally, impracticable to obtain the services of a surveyor in making a location, and the miner must depend upon his own skill and judgment. In such effort he usually fails. Indeed, it may be said, as to the course of his lines, he is always in error, and the natural object and permanent monument required by section 2324 are entirely beyond his grasp. He does not know what they are, nor how to refer to them. Everyone who is at all familiar with mining locations knows that in practice the first record must usually, if not always, be imperfect. Recognizing these difficulties, it has never been the policy of the law to avoid a location for defects in the record, but rather to give the locator an opportunity to correct his record whenever defects may be found in it." And the court there held that the section of the Colorado statutes which declares that defective certificates shall be void must be read in connection with the section authorizing amendments, and when so read, the section will be construed as saying that defective certificates are lacking in force and sufficiency until amended, but are not wholly void. In *Frisholm v. Fitzgerald,* 25 Colo. 290, 53 Pac. 1109, it was held that a mining claim location certificate may be amended to cure failure to refer to a natural object or permanent monument, though between the filing of the original and amended certificate another had filed on the claim. It would appear from this decision that no reference was made in the original certificate whatever to a permanent object. The section of the Colorado statute under consideration in that case was similar to our section 5 above quoted, in that it provides for the correction of errors and defects occurring in the original certificate, and it authorizes a change of boundaries or tak-

ing in of territory not included in the original certificate, and the court in that case say: "The plain purport and effect of the first clause is to enable the minor, who, in good faith, has gone upon the public domain and expended time and money in per- forming the substantial acts required to locate a mining claim, but through inadvertence or ignorance has failed to comply with the requirements of the statute in describing his claim, to cure such error at any time by an amendment correcting the defective description, and thus perfect his record as of the date of the original certificate. We do not understand that the proviso has reference to amendments of this character, but is only applicable to a change of boundaries and relocation that shall take in territory not before included within the claim"— although Campbell, C. J., and Gabbert, J., state, in a concur- ring opinion, that they express no opinion in regard to the con- struction of said statute. The rule there laid down is clearly the one applicable to the provisions of said section 5, and with that construction those provisions may be made to protect the rights of the locator, without prejudicing any interests that third parties have rightfully acquired. In *Strepey v. Stark,* 7 Colo. 614, 5 Pac. 111, it is said: "And even when the certifi- cate for any of the reasons set forth in the statute is deemed void, it has been admissible in evidence with a valid amended certificate correcting the defects of the original." (See, also, *Van Zandt v. Mining Co.* (C. C.), 8 Fed. 725, 2 McCrary, 159; *Jordan v. Schuerman* (Ariz.), 53 Pac. 579; *Moyle v. Bullene,* 7 Colo. App. 308, 44 Pac. 69.)

The above-cited decisions are from Colorado, a state where there is a statutory provision which declares that, where the certificate fails to describe the claim with reference to some natural object or permanent monument, it is void. We have no such provision. This court is in accord with the rule laid down in those decisions upon the question under consideration here. If in making the amended location it included land not included in the original location, and interfered with ex- isting rights as to such land, the amended location would not relate back to the date of the original location, so far as the

recently included land is concerned. The record shows that the amended location was made by one having authority to make such location. Such authority is not required to be in writing.

We have examined assignments of error numbered from 3 to 10, inclusive, and concluded that the court erred in not admitting the evidence referred to in said assignments. The trial court, however, took the view that the original certificate of location was absolutely void, and on that ground rejected said evidence.

It follows that the court erred in granting the nonsuit, and the judgment is reversed, and the cause remanded for further proceedings. Costs of the appeal are awarded to the appellants.

Quarles, C. J., and Stockslager, J., concur.